UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                         :

LANE MIKALOFF,                :          CASE NO. 5:06-CV-96
                         :
          Plaintiff,        :
                         :
vs.                        :          FINDINGS OF FACT AND
                         :          CONCLUSIONS OF LAW GRANTING
SHERRI BEVAN WALSH, ETC., ET AL., :          JUDGMENT FOR PLAINTIFF
                         :
         Defendants.       :
                         :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       On January 17, 2006, Plaintiff Lane Mikaloff sued Defendant Sherri Bevan Walsh,

Summit County Prosecutor and Defendant Douglas J. Powley, Akron Chief City Prosecutor, in

their official capacities under 42 U.S.C. § 1983.  With this Section 1983 action, Mikaloff seeks

to enjoin enforcement against himself of Ohio Revised Code Section 2950.34,[1/] a law that

prohibits sex offenders from residing within 1,000 feet of a school.  In support of this action,

Mikaloff says Section 2950.34 is unconstitutional as an *ex post facto* law if applied against him.

This Court concludes that the residency restriction is an unconstitutional *ex post facto* law, enters

judgment against the defendant, and enjoins the defendant from enforcing the law as against

Mikaloff.

## I. Standing

---

[1/]Ohio's residency restriction was re-codified from 2950.031 to 2950.037 subsequent to trial.  2007 Ohio SB 10.  The Court will refer to the restriction at its present place in the code. The re-codification within the same Chapter of the Code does not change the Court's analysis.

Case No. 5:06-cv-96
Gwin, J.

As an initial matter, "When seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief." _Peoples Rights Org. v. City of Columbus_, 152 F.3d 522, 527 (6th Cir. ). That said, "an individual does not have to await the consummation of threatened injury to obtain preventive relief. Rather, if the injury is certainly impending, that is sufficient." _Id._ citing _Babbitt v. United Farm Workers Union_, 442 U.S. 289, 298 (1979). Typically, Courts engage in pre-enforcement review under the Declaratory Judgment Act when a statute imposes costly, self-executing compliance burdens. _Nat'l Rifle Ass'n of Am. v. Magaw_, 132 F.3d 272, 284 (6th Cir. 1997). A case is ripe for review "only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" _Nat'l Rifle Ass'n of Am. v. Magaw_, 132 F.3d 272, 284 (6th Cir. 1997).

The Court finds this is a case or controversy within the meaning of Article III. While Defendant has filed no action against Plaintiff, Defendant Walsh has indicated she awaits the outcome of this litigation before she will begin enforcement of O.R.C. § 2950.034 against Plaintiff Mikaloff. He has received a letter stating the Defendant will bring an injunction action against him if he does not move. Plaintiff's injury, therefore, is "certainly impending" and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" _See Peoples Rights Org._, 152 F.3d at 527; _NRA of Am. v. Magaw_, 132 F.3d at 284.

## II.  Findings Of Fact

This case stems from Ohio's imposition of residency restrictions on Mikaloff after he was sentenced and completed that sentence. In January 1987, Plaintiff Mikaloff pled guilty to three counts of rape, five counts of aggravated burglary four counts of aggravated robbery, one count of

Case No. 5:06-cv-96
Gwin, J.

robbery, and one count of felonious assault. [Tr. 67, 18].   The convictions resulted from a series of

burglaries that Mikaloff committed with co-defendants in October 1986 and at a time that he was

about 18 years old. [Tr. 18].  Regarding the rape convictions, Mikaloff raped an adult woman during

a burglary he committed near October 1986.  Arrested shortly after the rape, Mikaloff pled guilty

and received a sentence of  16 - 53 years for the rape and related offenses. [Tr. 20].  At the time he

pled guilty, Mikaloff was not informed that the rape conviction would foreclose him from residing

at his family home.  Nothing in the sentencing entry said anything regarding limitations upon where

Mikaloff could reside.

On November 1, 2002, and after having been incarcerated for about 16 years, Ohio paroled

Mikaloff to his family home at 1174 ½ Beardsley Street, Akron, Ohio. [Tr. 29-30].   Mikaloff

successfully completed parole in December 2004. [Tr. 33].  Plaintiff lives in a guest house on the

back of the property. [Tr. 14].  The house has two small bedrooms, a kitchen dining area, and a

bathroom.

Plaintiff Mikaloff's mother owns the property and she allows Mikaloff, his life-partner, Mary

Moffit, and their two children to live at the Beardsley Street residence rent-free. [Tr. 14, 36].

Mikaloff's family has owned the home for more than half a century. [Tr. 15].  Apparently because

of smaller size of 1174 ½ Beardsley, Moffit and the children often sleep in the main house at 1174

Beardsley, but Plaintiff Mikaloff sleeps in the smaller guest house. [Tr. 17].

Plaintiff Mikaloff and his family face a difficult financial situation.   Because of his past

convictions, Mikaloff Plaintiff faces difficulty obtaining work. [Tr. 39, 59-61].  Plaintiff Mikaloff

hopes to start a painting business but has not found the capital for start-up costs. [Tr. 39-40, 61].

In December 2005, the Summit County Sheriff sent Mikaloff a letter telling Mikaloff that

-3-

Case No. 5:06-cv-96
Gwin, J.

his residence was within 1000 feet of McBright Elementary School and requiring Plaintiff to move

by January 1, 2006. [Tr. 35].  Otherwise, the Sheriff would seek an order forcing Mikaloff to move.

*Id.*  Because of his limited financial resources, Plaintiff Mikaloff likely would be unable to rent

another residence and would be separated from his partner and children if he is ordered to leave his

home. [Tr. 41].

Section 2950.031, which became effective on July 31, 2003, prohibits sex offenders, like

Mikaloff from residing within 1000 feet of school premises. After an amendment that became

effective April 29, 2005, prosecutors can seek injunctive relief to require sex offenders to leave their

homes within 1000 feet of schools.  The Ohio General Assembly has recodified former Section

2950.031 as O.R.C. § 2950.034.   Section 2950.034, thus, became effective long after Mikaloff's

1987 conviction.

*B. The Ohio Law*

Ohio Revised Code § 2950.034 provides:

(A) No person who has been convicted of, is convicted of, has pleaded guilty to, or
pleads guilty to a sexually oriented offense or a child-victim oriented offense shall
establish a residence or occupy residential premises within one thousand feet of any
school premises or preschool or child day-care center premises.

(B) If a person to whom division (A) of this section applies violates division (A) of
this section by establishing a residence or occupying residential premises within one
thousand feet of any school premises or preschool or child day-care center premises,
an owner or lessee of real property that is located within one thousand feet of those
school premises or preschool or child day-care center premises, or the prosecuting
attorney, village solicitor, city or township director of law, similar chief legal officer
of a municipal corporation or township, or official designated as a prosecutor in a
municipal corporation that has jurisdiction over the place at which the person
establishes the residence or occupies the residential premises in question, has a cause
of action for injunctive relief against the person. The plaintiff shall not be required
to prove irreparable harm in order to obtain the relief.

Case No. 5:06-cv-96
Gwin, J.

Section 2950.034 contains no exception or "Grandfather Clause" exempting sex offenders who were convicted before Section 2950.034 became effective, or who owned their homes before its effective date, nor is there any exemption for sex offenders who established his or her residence in compliance with the statute before a school or day care center moves within 1000 feet of him or her.

### III.  Conclusions Of Law

Plaintiff Mikaloff asks this Court to find that O.R.C. § 2950.034 violates the Constitution's Ex Post Facto Clause because it is punitive and the Ohio General Assembly  enacted it long after he had been convicted and after he had served his sentence.  He asks the Court to enjoin its enforcement, as against him.  In support of his claim that O.R.C. § 2950.034 is an ex post facto law, Mikaloff argues that the Ohio General Assembly intended  to impose punishment with O.R.C. § 2950.034.  Alternatively, he says O.R.C. § 2950.034 is so punitive in effect that any innocent legislative intent does not save it.

Regarding his claim that O.R.C. § 2950.034 is punitive in effect, Mikaloff argues the statute is punitive because (a) it restricts where offenders can live in a manner similar to probation and parole, prototypical punishments; and (b) applies for the offender's life, irrespective of whether Ohio shows that Mikaloff poses a continuing threat.  After considering the parties arguments, the Court concludes that the residency restriction violates the Constitution's Ex Post Facto Clause.

### A. Standards of Review

In this case, Plaintiff Mikaloff seeks a declaratory judgment and injunctive relief.  Courts considers five factors in determining whether a declaratory judgment is appropriate:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

-5-

Case No. 5:06-cv-96
Gwin, J.

> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Casulty Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004).

Where a plaintiff establishes a constitutional violation after a trial on the merits, the Plaintiff should receive a permanent injunction if (1) she or he has shown a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998).

The Ex Post Facto Clause of the Federal Constitution "forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 29 (1981), quoting *Cummings v. Missouri*, 4 Wall. 277, 325-326 (1867).  The Clause seeks to require fair warning that certain conduct could lead to punishment and to restrain potentially vindictive legislation. *Id.*  It includes laws that enhance criminal penalties: "The heart of the Ex Post Facto Clause, U.S. Const., Art. I, § 9, bars application of a law "that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed ...." *Johnson v. United States,* 529 U.S. 694, 700 (2000), quoting *Calder v. Bull*, 3 U.S. 386, 397 (1798) ("The enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty; and therefore they may be classed together.").  "To fall within the ex post facto prohibition, two elements must be present: (1) the law must apply to events occurring before its

Case No. 5:06-cv-96
Gwin, J.

enactment, and (2) it must disadvantage the offender affected by it." *United States v. Abbington*, 144 F.3d 1003, 1005 (6th Cir. 1998), quoting *United States v. Reese*, 71 F.3d 582, 585 (6th Cir.1995).

However, the Ex Post Facto Clause is not necessarily implicated when a retroactively applicable statute "produces some ambiguous sort of 'disadvantage,' . . . but . . . whether [it] . . . increases the penalty by which a crime is punishable." *California Department of Corrections v. Morales*, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). The key issue in this case is whether or not the Act is punitive, because only punitive statutes implicate the Ex Post Facto Clause.

Deciding whether a statute imposes punishment involves a two-step inquiry. First, the Court considers whether the Ohio General Assembly "indicated either expressly or impliedly a preference for one label [punitive or civil] or the other." *United States v. Ward*, 448 U.S. 242, 248 (1980). If the Ohio General Assembly indicates, either expressly or impliedly that the legislature's intent was punitive, then the inquiry ends, and the statute is subject to the ex post facto prohibition. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169 (1963).

If the Ohio General Assembly did not intend the statute to be punitive, or its intent is ambiguous, then the Court decides whether the statute is "so punitive either in purpose or effect" that it should be considered to constitute punishment. *Ward*, 448 U.S. at 249. This two-step inquiry is known as the "intent-effects."

If the legislature intended the scheme to be civil, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 100 (1997). If the intent of the legislature is unclear, however, that "does not justify requiring the 'clearest proof' of penal substance." *Smith v.*

-7-

Case No. 5:06-cv-96
Gwin, J.

*Doe*, 538 U.S. at 110 (Souter, J., concurring in judgment).

To determine whether the statutory scheme is so punitive in effect as to negate a state's intent to deem it civil, the Court considers five factors listed in *Doe*: "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a non-punitive purpose; or is excessive with respect to this purpose." *Id.* at 96 (majority opinion).  These factors are "neither exhaustive nor dispositive."  *United States v. Ward*, 448 U.S. 242, 249 (1980).

**B. Legislative Intent**

Whether a statutory scheme is civil or criminal "is first of all a question of statutory construction." *Hendricks*, 521 U.S. at 361.  The Court "must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Hudson*, 522 U.S. 93, 99 (1997).  To determine whether the legislature impliedly indicated its intent, the Court will consider the other attributes the Supreme Court noted in *Doe*, including the manner of the law's codification or the enforcement procedures it establishes. *See Doe*, 538 U.S. at 94.

The Court finds that the Ohio General Assembly intended the residency restriction to be penal.  There are, however, arguments on both sides.  For that reason, the Court considers the law to be somewhat ambiguous.  The Court will first consider the law's lack of expressed purpose.  The Court will then discuss the law's implied purpose, considering the law's codification in the criminal code and specifically Chapter 2950.  The Court will also discuss the law's enforcement procedures, both in terms of the prosecutors who enforce the residency restriction and the injunction remedy.

-8-

Case No. 5:06-cv-96
Gwin, J.

Finally, the Court will consider other courts' construction of the law's purpose.

*1. The Ohio Law's Expressed Purpose*

The Ohio General Assembly did not expressly indicate whether the residency restriction is criminal or civil. Defendants argue that Section 9 of Senate Bill 5, an uncodified section of the bill that enacted the residency restriction, shows the legislature's intent that O.R.C. § 2950.34 is civil. The language states:

> SECTION 9. This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reason for such necessity is that it is crucial for this state to make the changes in this act as soon as possible, in order to expand the protections and information afforded residents of this state regarding offenders who commit sexually oriented offenses or child-victim oriented offenses and in order to comply with the federal Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act and standards adopted under that Act and receive related federal funding that is contingent upon compliance. Therefore, this act shall go into immediate effect.

Initially, this language suggests the bill is civil, and for "the immediate preservation of the public peace, health, and safety." But a closer look quickly reveals this is not the case. The language is intended to address the effective date of the law, not the general intent of the law. The Court further notes that Senate Bill 5 included provisions defining certain acts as crimes. *See, e.g.*, 2003 Legis. Serv. Ann. 29 at 42-43 (codified at O.R.C. § 2907.07); *Id.* at 43 (codified at O.R.C. § 2919.24). It also includes certain sentencing provisions. *Id.* at 48-54 (codified at O.R.C. § 2929.13); *Id.* at 54-58 (codified at O.R.C. § 2929.19); *Id.* at 58-60 (codified at O.R.C. § 2929.21). The entire bill, to which Section 9 applies, cannot be civil when it includes such provisions. For those two reasons, Section 9 does not designate the bill, or the provisions within it, as nonpenal.

*2. The Ohio Law's Implied Purpose*

*a. The Law's Codification*

Case No. 5:06-cv-96
Gwin, J.

Ohio codified the residency restriction in Section 2950.034 in Ohio's criminal code. Where a legislature chooses to codify a statute suggests its intent. *Hendricks*, 521 U.S. at 361. A statute's codification, however, is not dispositive. *Doe*, 538 U.S. at 94; *see also United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364-65 (1984) (holding a forfeiture provision civil despite its being in the criminal code). In *Doe*, for instance, placement in the criminal procedure code did not negate the legislature's expressed purpose to create a civil law. Doe, 538 U.S. at 94. This case stands in contrast. The legislature did not express a purpose to create a civil law. The Ohio General Assembly's failure to identify the residency restrictions found in O.R.C. § 2950.034 as civil and its decision to include the provisioni in its criminal chapter gives some suggestion that the residency restriction was intended to be punitive. See, *Hendricks*. 521 U.S. at 361.

The General Assembly's treatment of other provisions in the same chapter further supports the inference that Ohio's legislature intended Section 2950.034 to impose criminal, not civil sanctions. In dealing with Ohio's registration and notification requirements for sex offenders, the General Assembly expressly stated that these provisions, have a "non-punitive purpose." O.R.C. § 2950.02; *see also State v. Cook*, 700 N.E. 2d 570 (1998) (finding Ohio's sex offender registration and notification laws are non-penal). Yet, Section 2950.034 is tellingly silent regarding whether the residency restriction has a civil or punitive purpose. Based on the statutory construction rule of *expressio unius*, the Ohio legislature's designation of the registration and notifications provisions as non-penal suggests that the other provisions of Chapter 2950, including the residency restriction, are penal.

Defendants rely on a sentence in *State v. Cook* that described Chapter 2950 as "serv[ing] the solely remedial purpose of protecting the public." 700 N.E.2d 570, 585 (1998). The rest of the case,

-10-

Case No. 5:06-cv-96
Gwin, J.

however, focused on the registration and address verification procedures.  As described, the General

Assembly had explicitly said that these registration and address verification provisions were not

intended to be punitive.  The Ohio Supreme Court's one-sentence description of Chapter 2950 as

remedial adds little.  More importantly, O.R.C. § 2950.99 makes failing to comply with other,

specific provisions of Chapter 2950 a felony.  This inclusion of criminal penalties is penal and not

something that "serves the sole remedial purpose of protecting the public."  Had the legislature made

it a felony to fail to register and made that retroactive, it also would have violated the Ex Post Facto

Clause.  For these reasons, the Court finds the Ohio General Assembly intended Chapter 2950 to

have a civil purpose for those provisions in which the legislature has expressed such an intent but

not for other provisions.

　　　　In *Cutshall v. Sundquist*, the Sixth Circuit found Tennessee's sex offender registration law

non-punitive, despite its placement in the criminal code and without any expressed legislative intent

by looking to the law's language.  193 F.3d 466, 474 (6th Cir. 1999).  The Sixth Circuit considered

the provisions "merely require registrants to supply basic information; the burdens imposed are

minor, involving only the completion of the appropriate forms." *Id.*  These provisions "evidence[d]

an intent on the part of the legislature to monitor the whereabouts of convicted sex offenders.

Moreover, the authority of law enforcement agencies to disclose registry information is limited to

situations in which disclosure is necessary to protect the public." *Id.*  Ohio's residency restriction,

however, manifests an intent far beyond monitoring the whereabouts of sex offenders.  The

Tennessee sex offenders could move anywhere, provided they kept the authorities informed of their

movements.  Ohio, on the other hand, restricts its sex offenders' behavior beyond requiring they

notify the authorities of their whereabouts.

-11-

Case No. 5:06-cv-96
Gwin, J.

*b. The Law's Enforcement Procedures*

In determining whether the Ohio General Assembly intended the residency provisions to impose a punitive sanction, the Court also looks to the statute's enforcement procedures. Ohio's residency restriction provides for an injunction, and a resident living within 1,000 feet of the school or childcare center or the city prosecuting attorney may bring the action. In *Hudson*, the Supreme Court found non-punitive legislative intent of a law that empowered an administrative banking agency to enforce it. 538 U.S. at 103. By contrast, here county prosecuting attorneys or other municipal chief legal officers hold the power to enforce the law's provisions. O.R.C. § 2950.031(B). While this does not alone establish the General Assembly's intent to make the law penal, it contributes to the argument that the law was so intended.

Defendants argue that county prosecutors enjoy civil, as well as criminal authority. They contend that because the prosecutors have the legal authority to advise and represent the local boards of commissioners, elections, etc., their ability to bring an enforcement action under the residency restriction law does not make the law penal. The county prosecutors, however, only have the authority to bring actions that the civil officer or board *directs* the prosecutor to defend them in suits brought against them. In other words, the county prosecutors act as counsel for civil boards. They do not have their own, independent authority to bring actions that are not criminal in nature. The fact that prosecutors can bring these enforcement actions acting alone, therefore, favors finding a penal intent.

Further, Defendants argue that the County Prosecutors can only seek an injunction and that neighbors can bring these actions. The Court agrees that injunctions are a civil remedy. Further, neighbors' ability to bring an enforcement action gives some support for Defendants argument that

-12-

Case No. 5:06-cv-96
Gwin, J.

Section 2950.034 provides a civil remedy.  On balance, because prosecutors can bring the actions but the enforcement mechanism is an injunction, the Court finds the enforcement procedures ambiguous as to whether the law was intended as criminal or civil.

*3. Other Challenges to the Ohio Law*

Two Ohio Courts have considered similar challenges and have found the legislature intended the residency restriction to be civil.  *See Doe v. Petro*, 2005 WL 1038846 (S.D. Ohio May 3, 2005); *State v. Billings*, 860 N.E.2d 831 (Ohio Ct. Com. Pl. 2006).  *Doe v. Petro*, however, does not engage in any analysis, rather it simply states the statute is nonpunitive as if it were a foregone conclusion. The Court finds this not persuasive.

In finding O.R.C. § 2950.034 nonpunitive, *Billings* found support in its providing injunctive relief; its codification in the same section as the registration and notification provisions that include a statement saying that they are intended to be a civil control, and that the criminal code contains other traditionally civil provisions such as post-conviction relief and victims' rights protections. *Billings*, 860 N.E.2d at 85-86.  The Court has already analyzed the first two of these arguments above.

In *Billings* the Ohio trial court also relied on *Doe v. Smith* stating that the imposition of restrictions on sex offenders is a nonpunitive governmental objective.  860 N.E.2d at 85 n. 15 *citing Doe*, 538 U.S. at 93.  This just begs the question.  The real question is the nature of the restriction. In upholding notification and registration requirements as nonpunitive restrictions, the *Doe* Court explicitly emphasized that these requirements "[did] not restrain activities sex offenders may pursue but leaves them free to change jobs or residences." *Doe*, 538 U.S. at 100.  At the very least, this suggests that residency restrictions present a different case from registration and notification

-13-

Case No. 5:06-cv-96
Gwin, J.

provisions.  This Court concludes, therefore, that *Billings* is not persuasive.

Finally, the Court finds little importance that the Ohio criminal code contains other civil provisions.  Neither post-conviction relief nor victims' rights protections restricts otherwise legal behavior in a manner similar to the residency restriction.  As discussed above, Chapter 2950 includes provisions designated failing to register or notify the officials of a move as a felony.  O.R.C. § 2950.99.  While the underlying duty to register is not punitive, the felony of failing to register is a criminal provision.  The victims' rights and post-conviction relief chapters do not include any designations of crimes as felonies.  Chapter 2950 clearly has a mixed purpose.

Based on the above stated reasons, this Court finds, on balance, the legislature intended the statute as punitive.   Even if it did not, the statute's intent is at the very least unclear.  For that reason, the Court will consider the statute's effect.

**D. The Effect of the Statute**

Where a legislature intends a statute to be punitive, "that ends the inquiry." *Doe*, 538 U.S. at 92. Even if the legislature's intent is unclear, however, the effect of the statute would meet the second prong of *Doe*.  Only the "clearest proof" that the overwhelming effect of the law is to impose punishment will negate the legislature's clearly expressed intent.  *Id.*  An unclear legislative intent "does not justify the 'clearest proof' of penal substance" standard. *Id.* at 110 (Souter, J., concurring).

Turning to the *Doe* factors, the Court finds the residency restriction imposes an onerous affirmative disability and restraint; is analogous to parole and probation, historical forms of punishment; promotes the traditional aims of punishment, deterrence and retribution; the law is at best minimally related to the non-punitive purpose of protecting children and is excessive in relation to this alleged purpose.

-14-

Case No. 5:06-cv-96
Gwin, J.

*1. Affirmative Restraint*

  As applied to Mikaloff, the residency restriction imposes an onerous affirmative disability and restraint.  In determining whether the act imposes a restraint the Court "inquire[s] how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Doe*, 538 U.S. at 99-100.  The *Doe* Court noted that Alaska's notification and registration requirements "do[] not restrain activities sex offenders may pursue but leave[] them free to change jobs or residences." *Id.* at 100.  Not so here.  In finding the registration and notification requirements to be constitutional, the Court emphasized that "the record in this case contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred." *Id.*

  In this case, the law prevents a sex offender from living in his own home, even if he purchased the home before the law took effect or if a daycare or school moved within 1,000 feet of his home after he established residency there.  This is a substantial housing disadvantage.  While the law does not affect ownership of property, it affects one's freedom to live on one's own property.  A sex offender is subject to constant eviction, and there is no way for him or her to find a permanent home.  For, there are no guarantees a school or daycare will not open up within 1,000 feet of anywhere. This may prevent an offender from purchasing a home, from remodeling it, or even from entering into long-term service contracts for amenities such as cable television.  Judge Sheehan, Kenton District Court, Fourth Division in the Commonwealth of Kentucky discussed how residency restrictions could impact "where an offender's children attend school, access to public transportation for employment purposes, access to employment opportunities, access to residential alcohol and drug abuse rehabilitation programs and even access to medical care and residential nursing home

Case No. 5:06-cv-96
Gwin, J.

facilities for the aging offender." *Commonwealth v. Baker*, 07-M-00604 (Kenton Dist. C., 4th Div. Apr. 20, 2007) *cert. granted* Aug. 23, 2007, 2007-SC-000347.  This Court agrees that "residency restrictions carry major consequences above and beyond the location of one's home." *Id.*

Further, the Ohio law affirmatively restrains Plaintiff in this case.  Plaintiff Mikaloff is not "free to change residences," but can only move to homes that are not within 1,000 feet of a school.  Even more onerous, Plaintiff is not free to remain in his family home, a home that has been in his family for more than 50 years and where he can live rent-free

Defendants acknowledge the law imposes an affirmative restraint, but argues the imposition does not require a finding that the government has imposed punishment.  *See Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005).  The Court acknowledges that no factor in this analysis is dispositive, as both *Miller* and *Kansas v. Hendricks* found affirmative restraints in the analyzed schemes but neither found the law punitive.  *Hendricks,* 521 U.S. 346, 363 (1997); *Miller,* 405 F.3d at 721.  This does not change this court's analysis that the residency restriction imposes a restraint.

*2. Regarded in our History and Traditions as Punishment*

The Court finds the residency restriction analogous to the residency restrictions typical to probation and parole.  Probation and parole are regarded by our history and traditions as punishment.  "[P]arole is an established variation on imprisonment of convicted criminals. . . .  The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972).  Further, Congress lists probation as among the appropriate types of punishment a judge can impose.  28 U.S.C. § 994.

The residency restriction places a veto-power over the location of the sex offenders'

-16-

Case No. 5:06-cv-96
Gwin, J.

residence in the hands of law enforcement and that veto-power continues after the sex offender establishes his residence.  Parole officers and parole boards hold a similar power over parolees. They must approve a parolee's initial residence and can compel the parolee to move.  In this case, Plaintiff Mikaloff needed the parole board's approval of his mother's house before the board would release him and the parole board retained the power to force Plaintiff to move if it believed the home may trigger re-offense or otherwise violate a condition of his parole.

The residency restriction actually provides for a more onerous punishment than parole because it is a blanket prohibition.  In determining whether a particular home is suitable for a particular parolee, the parole officer or board undertakes a case-specific analysis.  The residency restriction engages in no such case-by-case analysis.  It limits a sex offender in a way that goes beyond the limits traditionally placed on where a parolee may live.

Further, the residency restriction applies for life, whereas parolees are usually paroled for a certain period of time.  The law prevents Plaintiff Mikaloff from ever living in his family home again, regardless of whether he "reintegrate[s] into society as [a] constructive individual." *Morrissey,* 408 U.S. at 477.  In this way, the law goes well beyond parole in that it never allows the sex offender to reintegrate into society.

The Defendants argue that non-compliance with the residency restriction does not trigger criminal sanction, whereas violating a parole or probation condition does.     The Court does not believe, however, that the law must be exactly the same as parole to be punitive.  Although somewhat different from parole, O.R.C. § 2950.034 is sufficiently similar.

Finally, subjecting a sex offender to constant ouster from his or her home seems a significant deprivation of liberty and property interests.  It sentences them to a life of transience, forcing them

-17-

Case No. 5:06-cv-96
Gwin, J.

to become nomads.  While such a punishment may be appropriate, it cannot be applied retroactively through ex post facto legislation.

*3. Promotes Traditional Aims of Punishment*

Punishment aims to impose retribution and deterrence.  *Smith v. Doe*, 538 U.S. at 102; *Kansas v. Hendricks*, 521 U.S. at 373 (2002) (Kennedy, J., concurring)("[R]etribution and general deterrence are [goals] reserved for the criminal system alone.").  Ohio's residency restriction serves both.

The publicity of the residency restrictions increases general deterrence.  "Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior." *State v. Cook*, 700 N.E.2d 570, 583 (Ohio 1998).   Given the restriction that O.R.C. § 2950.034 places up on sex offenders it serves an obvious deterrent purpose.

Defendants cite *Doe*, stating that "[t]o hold the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation."  *Smith v. Doe*, 538 U.S. at 102.  The Court agrees, but Ohio's residency restriction does more than promote general deterrence.

Ohio's residency restriction significantly furthers retributive purposes.  "Retribution is vengeance for its own sake.  It does not seek to affect future conduct or solve any problem except realizing justice." *State v. Cook*, 700 N.E.2d 570, 583 (Ohio 1998).   The residency restriction applies regardless of the type of offense committed, the offender's classification level, and his or her risk of re-offense. A feeble, aging paraplegic must leave his home just as a younger one.  This lack of any case-by-case determination demonstrates that the restriction is "vengeance for its own sake." Defendants argue the law is remedial and not punitive in nature, but its failure to make any

Case No. 5:06-cv-96
Gwin, J.

differentiations between offenders belies this argument.

*4. Rational Relation to a Nonpunitive Purpose*

The Court heard conflicting expert testimony on the efficacy of the residency restriction. The Court, however, does not believe its duty is to judge the wisdom of the legislature's enactment, only whether it rationally relates to a non-punitive purpose.

Defendants assert the residency restriction is rationally related to the non-punitive purpose of protecting school children from sex offenders near schools. The restriction does limit the access and opportunity that a sex offender will have in re-offending against a child walking in front of his residence to or from school. Yet, it only restricts a sex offender's place of sleep. It does not limit the offender's ability to occupy a residence in proximity to the school during school hours. It dos not limit the offender's ability to go to any public park or drive on any street within 1,000 feet of a school. And it does not limit the offender's access to children in the offender's own neighborhood.

Ohio has found Mr. Mikaloff a sexual predator. But its statute does not and will not prevent him from spending all of his days, while school is in session and while children are traveling to and from school, at his family home within 1000 feet of the school. Indeed, the Court finds it likely that on the facts before it Mr. Mikaloff will do just that. The statute, instead, forces him to sleep in his truck at night, when, presumably, the children are safely at home. *See also Commonwealth v. Baker*, 07-M-00604, at 26  (Kenton Dist. Ct., 4th Div. April 20, 2007) *cert. granted* Aug. 23, 2007, 2007-SC-000347 (noting a sex offender "can return to the family home from which he was forced to move on a daily basis if he so chooses, provided he does not sleep there, and peer out the window in deviant lust at the toddlers frolicking on the playground. While doing so, provided he can conceal his act of self gratification from public view, he can even masturbate. He can do all these things

-19-

Case No. 5:06-cv-96
Gwin, J.

legally, without offending the residency restrictions.").

Both experts agreed that an important question asks whether many children reside around the sex offender's house, not that home's proximity to a school. [Tr. 194-196]. Thus, Ohio's residency restriction shifts the risk of molestation from children living near a school to children living farther away. [Tr. 196]. As Defendant's expert testified: "it's not the magic of the 1000-foot. It's that we can deny access and opportunity to a population that is vulnerable for sex offenders." [Tr. 201]. Indeed, if the sex offender lived near the school, the children's parents would be notified of their presence, due to Ohio's notification law, and therefore could advise their children to stay away from the offender.  If the offender is only present during the day, however, the children's parents will have no warning of the potential danger.

Further, Ohio's residency restriction does not address the majority of child sex abuse cases because those cases involve family members or acquaintances.  The overwhelming majority of child sex abuse cases involve an abuser who is related to or acquainted with the child victim. [Tr. 87, 91, 93].  Child sex abuse involves an offender who is related to the child (including step-relationships) approximately fifty percent of the time.   Yet, the law has no effect on sex offenders who abuse family members, and does not even restrict these offenders ability to live with their previous victims.

It is unclear that the residency restriction denies sex offenders access and opportunity to school children.  The Court only considers, however, whether a "rational connection" exists.  *See Doe*, 538 U.S. at 102.  The Court concludes that to restrict where an individual sleeps at night, even while it does not restrict where he or she spends her days, has some rational relation to restricting access or opportunity to children in those areas.

*5. The Statute's Excessiveness with Respect to that Purpose*

-20-

Case No. 5:06-cv-96
Gwin, J.

While the statute is rational, the Court finds the statute is excessive with respect to its stated purpose. The complete lack of individualized risk assessment troubles the Court. As Justice Souter noted in *Doe* "the fact that [the registration and notification law] uses past crimes as the touchstone, probably sweeping in a significant number of people who pose no real threat to the community, serves to feed suspicion that something more than regulation of safety is going on." *Doe*, 538 U.S. at 109. The Ohio statute sweeps in individuals regardless of their current risk of recidivism.

It would be possible to base a residency restriction on a more individual basis. For instance, Arkansas has a similar statute with individualized risk assessment, as do many other states. *See Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1017 (8th Cir. 2006) (noting the Arkansas residency restriction statute with individualized risk assessment was on "stronger constitutional footing than [an] Iowa statute" without similar individualized assessment). *But see Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005) (finding Iowa residency restriction without an individualized assessment did not violate the Ex Post Facto clause of the Federal Constitution); *c.f. id.* at 725-26 (Melloy, J., dissenting) (arguing the law was excessive in relation to its purpose in part because of the lack of individualized assessment).

**E. Appropriate Relief**

A declaratory judgment is appropriate in this case. It would both completely settle the controversy and readily clarify the legal relations between Plaintiff Mikaloff and Defendants. *See Bituminous Casulty Corp.*, 373 F.3d at 813. Further, no pending state court proceedings currently exist and so the judgment is not a "race to res judicata" nor would it encroach upon state court jurisdiction. Finally, there is no more effective remedy for protecting Plaintiff Mikaloff's rights. *See id.*

Case No. 5:06-cv-96
Gwin, J.

Plaintiff has also shown a continuing irreparable injury if the court fails to issue the injunction, and the lack of an adequate remedy at law.  *See Kallstrom*, 136 F.3d at 1067.  This Court has already found that Mikaloff's inability to continue to reside in his home would cause him severe injury.  Further, this injury has no adequate legal remedy.

### IV.  Conclusion

For the reasons stated above, the Court **DECLARES** that O.R.C. § 2950.034 violates the *ex post facto* clause of the Constitution and **ENJOINS** defendants from enforcing this law against Plaintiff Mikaloff.  This action is terminated under Fed. R. Civ. P. 58.

IT IS SO ORDERED.


Dated: September 4, 2007                          s/            *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

-22-