UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LANE MIKALOFF,** | ) | Case No. 5:06 CV 0096 |
| | ) | |
| Plaintiff, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **SHERRI BEVAN WALSH**, | ) | (Regarding ECF No.56) |
| **SUMMIT COUNTY PROSECUTOR,** | ) | |
| **et al.** | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |

*INTRODUCTION*

The matter referred to the undersigned is plaintiff Lane Mikaloff's motion for attorney fees and costs under 42 U.S.C. §1988. (ECF No. 56). Following a bench trial where this Court entered a permanent injunction against enforcement of a state statute that prohibited sex offenders from living within 1,000 feet of a school and a declaration that the statute violates the violated the Ex Post Facto clause of the U.S. Constitution, Mikaloff has moved for attorney fees in the amount of $32,863.75, including a 1.25 multiplier, and for costs in the amount of $1,986.28. Defendant State of Ohio has objected to an award of fees on the grounds that Mikaloff's motion is untimely, and, if fees are awarded, objects to a multiplier; but defendant Walsh, Summit County Prosecutor did not respond to Mikaloff's attorney fee motion. For the reasons explained herein, the undersigned recommends that the fee motion be deemed timely filed, and that Mikaloff be awarded $34,700.03 in attorney fees and costs, including a 1.25 multiplier.

*PROCEDURAL HISTORY*

In early 2006, Lane Mikaloff filed an action for declaratory judgment and injunctive relief challenging the constitutionality of O.R.C. § 2950.034, which restricted adjudicated sex offenders from living within 1,000 feet of any school premises in Ohio.  Mikaloff is an adjudicated sexual predator who received a letter from the Summit County sheriff advising Mikaloff that his residence was within 1,000 feet of a school.  The letter informed Mikaloff that he had to move by January 1, 2006 or a complaint seeking an order requiring him to move would be filed.  Mikaloff brought suit against Summit County prosecutor Sherri Bevan Walsh and Akron city prosecutor, Douglas Powley,[1] challenging the statute's purported retroactive application to himself and other sex offenders who committed their offenses prior to July 31, 2003.  The State of Ohio intervened to defend the constitutionality of the statute.  The matter was tried to the bench on June 19, 2006.  The parties filed proposed findings of fact and conclusions of law and post-trial briefs.  On September 7, 2007, this district court issued findings of fact and conclusions of law granting judgment for Mikaloff.  (ECF No. 47).  This court declared O.R.C. § 2950.034 unconstitutional as violative of the *Ex Post Facto* clause of the Constitution and enjoined defendants from enforcing the statute against Mikaloff.  (ECF Nos. 47 & 48).

Mikaloff filed a Motion for Attorney Fees on September 18, 2007, within the 14-day filing requirement of Fed.R.Civ.P 54.  (ECF No. 49).  The parties jointly moved to stay consideration of that motion pending defendants' appeal to the Sixth Circuit.  (ECF No. 52).  In the joint motion, the parties contemplated "upon conclusion of the appeal, Plaintiff is entitled to

---

[1]Powley was later dismissed from the lawsuit.

3

petition this Court to establish a schedule for the resolution of the attorney fees issue." (*Id.*)  On October 9, 2007, this Court granted the joint motion to stay adjudication of plaintiff's motion for attorney's fees.  In its marginal order granting the motion to stay, the Court denied the motion for fees, without prejudice to its refiling upon completion of the defendants' appeal to the Sixth Circuit Court of Appeals:

> Motion granted 10/9/07; motion for attorney fees is denied as moot without prejudice to refiling upon a ruling from the United States Court of Appeals for the Sixth Circuit as to defendant's appeal of this court's judgment; referral of motion [to the Magistrate Judge] for attorney fees is termed.

(ECF No. 53).

The State subsequently moved to voluntarily dismiss its appeal, which the Sixth Circuit granted on March 8, 2008.  Mikaloff re-filed his motion for attorney fees on June 24, 2008.  (ECF No.56).

*TIMELINESS*

The State's principle argument in opposition to Mikaloff's motion for fees is that the motion is untimely.  The State points out that Fed.R.Civ.P. Rule 54(d)(2)(B) requires a prevailing party to file a motion for attorney fees "no later than 14 days after entry of judgment unless otherwise provided by statute or court order."  It is undisputed that Mikaloff's original motion for attorney fees was timely.  But, Mikaloff operated under the mistaken belief that his initial motion would be reconsidered after the State's voluntary dismissal of its appeal and thus did not re-file his motion for attorney fees and costs until June 24, 2008, over three months after the Sixth Circuit granted the voluntary dismissal.

4

The State argues that pursuant to Rule 54(d)(2)(B), Mikaloff's June 24, 2008 motion for fees is untimely because he only had fourteen days, or until March 26, 2008, to file his request for attorney fees. The State relies upon *Valero Terrestrial Corp. v. McCoy*, 37 Fed.Appx. 683 (4th Cir. 2002) and *44 Liquormart, Inc. V. Rhode Island*, 940 F.Supp. 437 (D.R.I. 1996) to support the proposition that the 14-day time limit set forth in Fed.R.Civ.P 54 applies following an appellate court decision. The appellate court's rulings in both *Valero* nor *44 Liquormart*, however, were judgments on the merits–not the entry of a voluntary dismissal.

Mikaloff argues that a voluntary dismissal is not a judgment that triggers Rule 54. *See Pavlovich v. Nat'l City Bank*, 461 F. 3d 832, 837 (6th Cir. 2006). In *Pavlovich*, the Sixth Circuit held that the district court did not abuse its discretion in determining that a civil RICO plaintiff's voluntary dismissal without prejudice of her claim against a bank was not a "judgment" triggering the 14-day filing requirement for a motion for attorney fees and costs. *Id.* at 836. The Sixth Circuit reasoned that since ordinarily an appeal does not lie from a voluntary dismissal it was reasonable for the district court to conclude that it does not fall within the ambit of Rule 54(d)(2)(B).

Mikaloff also directs the court to an analogous case from the District of Vermont. *White River Amusement Pub, Inc. v. Town of Hartford, Vt.*, No. 1:02-CV-320, slip op. (D. Vermont, June 10, 2008). In *White River*, the district court faced a similar contention over the timeliness of an attorney fees motion and the underlying rationale of Rule 54. In that case, the defendant claimed that the plaintiff's motion for fees was time barred because it was not filed with the district court within 14 days of the appellate judgment. *White River*, slip op. at 1. The *White River* court rejected that argument because of several circumstances that took the motion outside

of Fed. R. Civ. P. 54(d)(2)(B)'s 14-day filing period.  First, like Mikaloff, the *White River* plaintiff made an initial timely motion to the district court; which was denied without prejudice to refiling after defendant's appeal; and (unlike Mikaloff) the plaintiff timely filed a motion with the court of appeals after an appealable decision on the merits.  Considering these facts together, the court in *White River* concluded that the defendant could not claim it was unfairly surprised by plaintiff's request or that plaintiff had been negligent in failing to seek fees. *Id.  See also* Fed. R. Civ. P. 54 advisory committee's notes (1993 Amendments)(one of the primary purposes of the Rule 54 deadline is to "assure that the opposing party is informed of the claim before the time for appeal has elapsed").

Here, the State was likewise well-informed of the attorney fee request.  First, Mikaloff's counsel timely filed the initial motion before the State was required to file an appeal.  Second, the state joined with Mikaloff in filing motion to stay consideration of the attorneys fees motion during the pendency of the appeal. (Doc. 52.)   Third, the State engaged in attorney fee negotiations with Mikaloff's counsel before and after filing its motion for voluntary dismissal. *See* Declaration of Marguerite Slagle.  For these reasons, Mikaloff's motion for attorney fees and costs is timely as he has complied with both the letter and spirit of Rule 54.

### *ATTORNEY FEES GENERALLY*

Mikaloff's fee request is based on the "lodestar method."  The lodestar method of computation is a fee calculated in terms of the reasonable hours of service at a reasonable rate and is the fairest and most manageable approach to determine an award of attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Pennsylvania v.*

*Delaware Valley Citizens Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439, 455-56 (1986); *Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 2, 109 S.Ct. 939, 942 n. 2, 103 L.Ed.2d 67 (1989); *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 636 (6th Cir. 1979) *cert. denied*, 477 U.S. 911 (1980); *United States v. General Electric Co.*, 41 F.3d 1032, 1048 (6th Cir. 1995).  The moving party must submit evidence supporting the hours worked and the rates claimed.  *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939.  Where the documentation is inadequate, the court may reduce the award accordingly.  *Id.*  Hours claimed may be cut for duplication, padding, or frivolous claims.  *Northcross*, 611 F.2d at 637; *Coulter v. State of Tennessee*, 805 F.2d 146, 150-51 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987).  The goal is to not overcompensate counsel with a "liberal" fee, but to award the "reasonable" fee necessary to encourage competent lawyers to undertake the representation.  *Coulter*, at 149; *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).[2]

***Calculation of Reasonable Attorney Fees, Methodology:***

***Reasonable Rate:***

Mikaloff requests $275.00 per hour for the work performed by David A. Singleton and $195.00 per hour for the work performed by Stephen JohnsonGrove.[3]  The State does not contest the hourly rates requested by Mikaloff, nonetheless, the undersigned will briefly address the

---

[2] No hearing was conducted since the parties chose to submit the matter on a series of briefs, affidavits and supporting exhibits.  Under these circumstances no hearing is required.  See *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995).

[3] The billing statement also includes a minimal amount of time for a law clerk, but there is no mention of him in Attorney Singleton's affidavit or in the motion for attorney fees and costs.  Accordingly, the issue of reasonableness of the time expended will be limited to the two individuals identified.  Because Mikaloff did not meet his burden of proving the reasonableness of the law clerk's rate, the $120 of fees for the law clerk's work was not considered in the undersigned's calculation.

7

reasonableness of the rates.  The moving party must submit evidence supporting the hours worked and rates claimed.  *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939.  To establish the "customary fee":

> . . . the burden is on the fee applicant to produce satisfactory evidence --in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to -- for convenience -- as the prevailing market rate.

*Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); and see *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984) (applying civil rights lodestar approach to determination of a reasonable fee in FLSA context).  In most cases, though, the relevant community rates will be the "local market rates."  *Wayne v. Village of Sebring*, 36 F.3d 517, 553 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995).

David Singleton and Stephen JohnsonGrove are both career public interest attorneys. As such they have no regular billing rate.  In *Blum v. Stenson*, 465 U.S. 886 (1984) the Court held that attorney fees to non-profit organizations were to be awarded on the same basis as those to private attorneys.  "In determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel ... are employed by ... a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorneys. fees."  *Id.* at 895.

To prove the reasonableness of the rates requested, Mikaloff submitted an affidavit from

private civil rights attorney Robert Laufman.  Mr. Laufman states he has litigated more than 300 federal civil rights cases and he has received court awarded fees on many occasions, he has argued attorney fees issues seven times in the Sixth Circuit and Federal Circuit and he has served as an expert witness on attorney fee matters.  Mr. Laufman opined as to the rates at which attorneys Singleton and JohnsonGrove should be awarded fees based upon the rates charged by attorneys with similar experience levels in Ohio and Kentucky and the rates other courts have awarded to similarly situated attorneys.

Attorneys Singleton and JohnsonGrove also submitted their own affidavits regarding their backgrounds in support of their requested rates.  David A. Singleton graduated from Harvard Law School in 1991.  For the past 16 years, most of his practice has been devoted to representing the disadvantaged through criminal defense and civil rights litigation.  Mr. Singleton is currently Executive Director of the Ohio Justice & Policy Center (formerly the Prison Reform Advocacy Center).  Mr. Singleton has litigated extensively on behalf of sex offenders and incarcerated persons throughout Ohio, both as a trial and as an appellate attorney.

Stephen JohnsonGrove is a graduate of Penn State (1997, with honors) and Temple University School of Law (2001, *cum laude*).  Mr. JohnsonGrove joined the OJPC staff and became the Project Director for the Second Chance Community Legal Clinics, serving the legal needs of people with criminal records.  Mr. JohnsonGrove has represented over 20 former sex offenders in state and federal court, raising constitutional challenges to Ohio's sex offender residency restriction in each case.

Based upon the Mr. Singleton's and Mr. JohnsonGrove's educational and professional backgrounds, the evidence of the reasonableness of the requested rates as submitted by Mr.

Laufman, and the lack of opposition, the undersigned recommends that the Court accept the requested hourly rates as reasonable.

### *Reasonable Hours:*

Mikaloff has submitted a billing statement through September 10, 2007 for a total of 144.33 billable hours of time. When determining a reasonable number of hours for which attorneys should be compensated, consideration will be whether the hours sought for the time expended represent reasonable billing judgment as in the situation between counsel and client. The court must be guided by the reasonable practices of the profession when determining whether a party has used poor billing judgment for hours spent on the case. *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1980); *Wayne v. Village of Sebring*, 36 F.3d 517 at 532. As related in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), in determining an appropriate fee award using the lodestar approach, "[i]n the private sector 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly charged to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority.'" *Id.* at 434, citing *Copeland v. Marshall*, 205 U.S. App. D.C. 390, 401 (1980) (emphasis in original).

The Sixth Circuit has recently addressed this situation holding that while "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended . . ." "explicitly detailed descriptions are not required." *Imwalle v. Reliance Medical Products, Inc.*, - F.3d -, 2008 WL 340450, at *17-18 (6th Cir.

2008), citing *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n. 2 (6th Cir. 1984); *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005); and see *Anderson v. Wilson*, 357 F.Supp.2d 991, 999 (E.D. Ky. 2005).  Accordingly, where the fee statement is a computerized calendar indicating the dates, times of work in tenths of an hour and some identification of the specific task then the court can determine with a high degree of certainty that the hours were actually expended.

As for the reasonableness of the hours, *Imwalle* states that counsel's billing statement must be real in context with the timeline of the litigation.  *Id.*, at *18.  This implies that if the brief description can be traced to contemporaneous activity as indicated by the docket then even the "briefest description" can be evaluated for its reasonableness.  In other words *Imwalle* explicitly requires the court not to limit itself to the four corners of the billing statement in ascertaining whether the hours claimed by counsel are reasonable.  Accordingly descriptions of work performed as "'Conference with,' 'Research,' 'Review of file,' 'Review documents,'" may be sufficient to establish the reasonableness of the hours.  See *Imwalle*, at *17.

Upon review of the billing, the undersigned finds no reductions are necessary for the time billed by Attorneys Singleton and JohnsonGrove.  The attorneys provided appropriate descriptions of the work performed, billed in tenths of an hour, and the work appears reasonable and necessary when viewed in context of the docket.  There is minimal duplication of effort and "office conferences."  The attorneys appeared to exercise appropriate billing judgment by often billing for less than the amount of time they spent on a task.  The billing statement does include a significant amount of travel time.  In light of the State's lack of opposition on the inclusion of travel time, the undersigned finds no reason to disallow the recovery of fees for travel time.

*Costs:*

Mikaloff asks the Court to award him $1,986.28 in costs. An attorney's fee under § 1988 includes those expenses that are incurred in order for the attorney to render his or her legal services and that would normally be charged to a fee-paying client. *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1023 (N.D. Ohio 1997), citing *Abrams v. Lightolier*, 50 F.3d 1204, 1225 (3d Cir. 1995); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Associated Builders & Contractors v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir.1990); *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983). Thus, "reasonable expenses, though greater than taxable costs, may be proper." *Id.,* citing *Harris*, 24 F.3d at 20. "Routine expenses which are incorporated into attorneys' rates as routine office overhead are not recoverable, however." *Id.* citing *Abrams*, 50 F.3d at 1225; *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir.1987); *Knop*, 712 F.Supp. at 588.

Mikaloff's seeks costs including the filing fee, the cost of two deposition transcripts and a trial transcript. The costs request also includes mileage reimbursement, hotel rooms, airfare and car rental for out-of-state depositions. In support of his request, Mikaloff has provided a declaration from Attorney Singleton to support that the costs were necessarily incurred and the expenditures were actually made. Mikaloff failed to provide the court with actual receipts, billing statements or invoices to substantiate these costs. Inclusion of such supporting documentation is preferable. The State has not objected to the amount of costs claimed, however, so the undersigned does not recommend the Court disallow the costs for lack of supporting documentation. Further, filing and transcript fees are generally compensable under 28 U.S.C. §1920. Travel expenses are generally compensable under 42 U.S.C. §1988(b). *See*

12

*Baker v. John Morrell & Co.*, 263 F.Supp.2d 1161, 1203 (N.D. Iowa 2003), *aff'd* 382 F.3d 816 (8th Cir. Iowa 2004).

### *MULTIPLIER*

Mikaloff requests that the court augment his attorneys fees by a 1.25 multiplier. Multipliers to the lodestar calculation are permissible in some cases of "exceptional success." *Barnes*, 401 F.3d at 745.  The party seeking an enhancement bears the burden of showing that the use of a multiplier is "necessary to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).  In the majority of cases, however, the quality of representation is "reflected in the reasonable hourly rate." *Id.*  The Sixth Circuit has held that a trial court may apply the *Johnson* factors during its initial calculation of the attorney-fee award or when the court is considering a request for an enhancement.  *United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502-03, 503 n. 3 (6th Cir.1984) (stating that the trial court should first conduct the initial evaluation, then examine the award against several factors, including the *Johnson* factors, but also noting that trial courts usually subsume the analysis of those factors within the initial calculation).  The 12-factor test announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) is as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

13

In his motion for fees, Mikaloff focused his arguments on only three of the twelve *Johnson* factors. Mikaloff claims his attorneys deserve a multiplier because of the extraordinary results achieved by obtaining a declaratory judgment that O.R.C. §2950.034 is unconstitutional. According to Mikaloff, the court's decision creates new precedent which other jurisdictions might follow. Mikaloff also asserts that the "undesirability" factor weighs in favor of a multiplier because private attorneys are unwilling to represent sex offenders. The State objects to Mikaloff's request for a 1.25 multiplier. The State offered rebuttal arguments to each of the three factors in its opposition. In his reply, Mikaloff offers an argument for a 1.25 multiplier based upon all of the *Johnson* factors, which the State did not have the opportunity to rebut since those arguments were raised for the first time on reply. With this in mind, the undersigned will focus on the three *Johnson* factors originally asserted by Mikaloff.

According to the State, a multiplier is not warranted because the case was not "undesirable" as Mikaloff contends. The State cites to more than a dozen challenges to O.R.C. §2950.034 by attorneys throughout the state. Also, the State points out that several attorneys and advocacy groups filed amicus briefs in support of constitutional challenges to the sex offender residency restrictions. Mikaloff counters that 9 of the 17 challenges to Ohio's sex offender registry restrictions were filed by the Ohio Justice and Policy Center, one case was filed by an attorney to whom the OJPC referred the case pro bono, and 3 of the litigants were pro se. Thus, according to Mikaloff, there were only four cases where a private firm undertook a challenge to sex-offender residency restrictions. Further, Mikaloff cites a case from Ohio's Eighth District court of appeals where the court noted that the sex-offender plaintiff who was challenging the

residency restrictions stated that he did not wish to proceed pro se but that he was unable to secure representation. *See Parma v. Silvas*, Cuyahoga App. No. 88104, 2007 WL 766019,*1 (Ohio App. Mar. 15, 2007). Mikaloff also provided evidence in the form of an affidavit from John E. Schrider, Jr., the Director of the Legal Aid Society of Southwest Ohio, LLC, that legal aid societies have not provided sex offenders with assistance on residency restrictions and few private firms are willing to take such cases given that they are not considered fee-generating. All things considered, the undersigned finds that representing a convicted sex offender in a challenge to the constitutionality of a statute that prohibits sex offenders from living within 1,000 feet of a school falls into the category of an undesirable case. *See Kenny A. ex rel Winn v. Perdue*, 532 F.2d 1209, 1234 (11th Cir. 2008) (noting that "an attorney who represents a pedophile attacking a sexual offender registration law on Due Process grounds" might "suffer social, political, or professional ostracism" deserving of a lodestar enhancement).

The State also claims that Mikaloff has not met the "great success" element of the *Johnson* test. According to the State, the relevant precedent-setting decision is the Ohio Supreme Court's ruling in *Hyle v. Porter*, 117 Ohio St.3d 165, 882 N.E.2d 889 (Ohio 2008), which essentially rendered the Mikaloff decision a hollow victory. The *Hyle* case, which was also prosecuted by the OJPC, holds that O.R.C. § 2950.034 does not apply retroactively to convicted sex offenders who committed offenses prior to the statute's effective date because the legislature did not including a clear declaration of retroactivity. Mikaloff counters that the decision in his case is the only federal case holding that sex-offender residency restrictions are punitive and therefore violate the Ex Post Facto clause of the U.S. Constitution. Mikaloff claims that the case will be instrumental in challenging the constitutionality of sex-offender statutes that

15

are being adopted throughout the country. Indeed, state courts in California and Indiana have relied upon *Mikaloff* in holding that sex offender residency restrictions are punitive. *See People v. Mosley*, 168 Cal. App.4th 512 (Cal. App. 4 Dist Nov. 19, 2008) and *State v. Pollard*, 886 N.E.2d 69 (Ind. App. May 13, 2008). Also, "considerations such as "the deterrent impact" of the lawsuit and "the importance of providing an incentive to attorneys to represent litigants...who seek to vindicate constitutional rights but whose claim may not result in substantial monetary compensation" are to be weighed when considering an award of attorneys' fees." *Norris v. Murphy*, 287 F.Supp.2d 111, 115 (D. Mass. 2003), citing *O'Connor v. Huard*, 117 F.3d 12, 18 (1st Cir.1997), cert. denied, 522 U.S. 1047, 118 S.Ct. 691, 139 L.Ed.2d 636 (1998).

Finally, the State argues that a multiplier is inappropriate because it would result in a windfall to Mikaloff's counsel. The State contends that counsel had completed much of the research and preparation for Mikaloff's case in their prosecution of several similar lawsuits. The State's arguments are conclusory. The State does not point to any evidence in support of its contention that a multiplier would result in a "windfall" to Mikaloff's counsel. It is true that Attorneys Singleton and JohnsonGrove have litigated similar sex offender cases. It is this experience that likely enabled them to litigate Mikaloff's case efficiently and to achieve an excellent result. The majority of the work that they have submitted in their billing statement is work that was unique to Mikaloff's case–like preparation of written discovery questions and responses, deposition preparation as well as conducing and defending depositions, and trial preparation. Counsel did not charge time to a significant amount of background research that they may have completed as part of their other cases. The State's "windfall" argument does not convince the undersigned that a multiplier is unwarranted.

16

A recent decision from the Southern District of Ohio comprehensively explained the circumstances courts consider to warrant a multiplier:

> Courts have used multipliers when a case is "pathbreaking and of great social import" (*Geier v. Sundquist*, 372 F.3d 784, 792-796 (6th Cir. 2004)), when counsel "establish[s] a new cause of action," when counsel "endure[s] public criticism," or when the case "result[s] in a change in the jurisprudence of any of the issues litigated." *West v. Tyson Foods, Inc.*, 2008 WL 5110954, at *3 (W.D.Ky. 2008); see also *Barnes*, 401 F.3d at 745-46 (The court granted a multiplier of 1.75 to the total fee award, reasoning this was appropriate because of the "novelty and difficulty" of the case and because of the "immense skill requisite to conducting this case properly." In addition, the court found the "result achieved was extraordinary" and the case was "highly controversial ... [as] few lawyers locally or nationally would take such a case." The court cautioned that a multiplier of 1.75 is near the upper end of what we consider 'reasonable.'); *Paschal v. Flagstar Bank*, 297 F.3d 431, 436 (6th Cir. 2002) (The court granted a multiplier of 1.5 to the total fee award because, "(1) the attorneys did an excellent job at trial, (2) this case involved claims of discriminatory treatment in an area (residential mortgage lending) where discriminatory treatment is often difficult to prove, (3) the marshaling of evidence was an arduous and time consuming task, and (4) the hourly rates used to calculate the lodestar are relatively modest'); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913 (S.D.Ohio 2001) (The court granted a multiplier of 1.5 to the total fee award because the case involved "11 years of contentious litigation" and "this case was not a particularly popular cause and was indeed, one in which a number of attorneys declined to participate" and the attorney was a solo practitioner); *James v. Frank*, 772 F.Supp. 984, 1003 (S.D.Ohio 1991) (The court granted a multiplier of 2 to the total fee award, primarily because it was shown that the plaintiff "would have encountered substantial difficulties in obtaining counsel"); *Meredith v. Jefferson County Bd. of Educ.,* No. 3:02CV-620-H, 2007 WL 3342282, at *4 (W.D.Ky. Nov. 9, 2007) (The court granted a multiplier of 1.75 to the total fee award because the "undesirability of the case" due to much "adverse precedent," the attorney's chances of winning were "problematic," and the attorney was "criticized and even vilified." Also, the court considered the "exceptional nature of counsel's success" as the "case has changed the face of American jurisprudence")

*Bank One, N.A. v. Echo Acceptance Corp.*, –F.Supp.2d–, 2009 WL 888687, *4 (S.D. Ohio Jan. 12, 2009).

The undersigned recommends that Mikaloff's attorney fee award be increased by a 1.25 multiplier for the following reasons. Mikaloff's counsel achieved great success by securing an

17

injunction against enforcement of O.R.C. §2950.034 as to Mikaloff and a declaration from a federal district court that the statute violates the *ex post facto* clause of the United States Constitution.  The success of the result obtained before this district court is not negated by the Ohio Supreme Court's subsequent determination that the statute is not retroactive.  Litigating constitutional issues on behalf of sex offenders is a difficult task that is undesirable.  The hours and rates claimed by the attorneys are relatively modest, as is the requested 1.25 multiplier.  A modest multiplier is warranted to fairly compensate the attorneys in this case.

## *CONCLUSION & RECOMMENDATION*

It is recommended that plaintiff's motion for attorney fees and costs (ECF # 56) be granted under 42 U.S.C. §1988 for a total award in the amount of $34,700.03 to be paid by defendants directly to plaintiff's counsel, the Ohio Justice & Policy Center, at its office in Cincinnati, Ohio.

                                                      s/James S. Gallas  
                                                United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: March 11, 2009