UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|                                    |   |                         |
|---|---|---|
| LANE MIKALOFF,                     | : |                         |
|                                    | : | CASE NO. 5:06-96        |
| Plaintiff,                         | : |                         |
|                                    | : |                         |
| vs.                                | : | OPINION & ORDER         |
|                                    | : | [Resolving Doc. No. 56] |
| SHERRI BEVAN WALSH, *et al.*,      | : |                         |
|                                    | : |                         |
| Defendants.                        | : |                         |
|                                    | : |                         |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Mikaloff moves this Court to award attorney fees and costs under 28 U.S.C. § 1988. Plaintiff seeks $32,863.75 in attorney fees ($26,291 in fees with a 1.25-times multiplier because of the nature and result in the case) and $1,986.28 in costs, for a total of $34,850.03. [Doc. 56-1.] Defendant State of Ohio opposes saying that (1) the motion for attorney fees was untimely and (2) the nature and result in this litigation do no require a multiplier. [Doc. 58-1.] The Court referred this motion to Magistrate Judge Gallas for a Report and Recommendation. [Doc. 57.]

Magistrate Judge Gallas issued a Report and Recommendation saying that this Court should award Plaintiff with fees a costs of $34,700.03.[1/] [Doc. 60.] Defendant State of Ohio objected. [Doc. 61.] When a district court refers a matter to a magistrate judge, the district court is required to

---

[1/] This amount includes a slight reduction of $120.00 ($150.00 including the multiplier) from the full amount requested and reflects Magistrate Judge Gallas's conclusion that Plaintiff failed to meet his burden of proving the reasonableness of a law clerk's rate. [Doc. 60 at 6.] Neither party objected to this slight reduction.

-1-

Case No. 5:06-96
Gwin, J.

conduct *de novo* review of those parts of the report and recommendation to which a party objects. 28 U.S.C. § 636.

In resolving this motion for attorney fees, this Court must decide whether this motion complied with Federal Rule of Civile Procedure 54(d)(2)(B)'s 14-day time limit governing a motion for attorney fees, and whether the nature and subject matter in the case warrants a 1.25-times multiplier. For the reasons stated below, this Court **GRANTS** Plaintiff's motion for fees and costs.

**I. Background**

On January 17, 2006, Plaintiff Mikaloff filed a Complaint against city officials saying that enforcement of Ohio Revised Code section 2950.031, which prohibited sex offenders from living within 1000 feet of a school, violated his constitutional rights. [Doc. 1-1.] After a bench trial, this Court issued an Order holding that section 2950.034 violated the ex post facto clause of the Constitution and enjoining the Defendants from enforcing this law against Plaintiff. [Doc. 47.]

Because Defendant State of Ohio challenges the timeliness of Plaintiff's motion, this Court will first outline the timing of the filings relevant to this motion. Rule 54(d)(2)(B) requires a party seeking an award of attorney fees must file a motion "no later than 14 days after the entry of judgment . . . [u]nless . . . a court order provides otherwise." FED. R. CIV. P. 54.

*I.A.    First Motion for Attorney Fees*

On September 4, 2007, this Court entered judgement in favor of the Plaintiff pursuant to Federal Rule of Civil Procedure 58. [Doc. 48.] Fourteen days later, Plaintiff moved for an award of attorney fees and costs. [Doc. 49-1.] This was the first motion for attorney fees. This first motion was timely. The Court then referred this motion to Magistrate Judge Gallas. [Doc. 50.]

On October 02, 2008, while the first motion for fees was still pending, Defendant State of

Case No. 5:06-96
Gwin, J.

Ohio appealed the Court's judgment to the Sixth Circuit Court of Appeals. [Doc. 51.] The next day, the parties jointly moved this Court to stay the adjudication of the motion for attorney fees pending the outcome of the Sixth Circuit's ruling on the appeal. [Doc. 52.] In this joint motion, the parties asked the Court to order that, "at the conclusion of the appeal, Plaintiff [will be] entitled to petition this Court to establish a schedule for resolution of the attorney fees issue." [Doc. 52.]

In a marginal order, this Court granted the motion: "Motion granted [October 9, 2008]; motion for attorney fees is denied as moot without prejudice to refiling upon a ruling from the United States Court of Appeals for the Sixth Circuit as to [D]efendant's appeal of this Court's judgment; referral of motion for attorney fees is term[inat]ed." [Doc. 53.]

I.B.   *Second (Currently Pending) Motion for Attorney Fees*

Defendant State of Ohio did not pursue the appeal to a final decision, but instead moved the Sixth Circuit for voluntary dismissal under Federal Rule of Appellate Procedure 42(b). On March 10, 2008, the Sixth Circuit granted Defendant State of Ohio's motion for voluntary dismissal. [Doc. 55.] Plaintiff Mikaloff did not refile his motion for attorney fees and costs until June 24, 2008, more than three months after the entry of the voluntary dismissal on this Court's docket. [Doc. 56-1.]

**II. Timeliness**

As noted above, Rule 54(d)(2)(B) requires a party seeking an award of attorney fees must file a motion "no later than 14 days after the entry of judgment . . . [u]nless . . . a court order provides otherwise."[2]

---

[2] The Advisory Committee Notes for the 1993 Amendments to Rule 54 note that "[o]ne purpose of this [14-day] provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed." A second purpose for this requirement is to "afford an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind." *Id.*

(continued...)

Case No. 5:06-96
Gwin, J.

Responding to Plaintiff's motion for fees, Defendant does not say that the first motion for fees was untimely. Defendant also acknowledges that this Court's order granting Plaintiff leave to refile the motion for fees after the Sixth Circuit's ruling constituted "a court order provid[ing] otherwise" under Rule 52(d)(2)(B) that extended the 14-day time limit until after the Sixth Circuit ruled on the appeal. [Doc. 61 at 2.] Defendant, however, says that the Sixth Circuit's granting of its motion for voluntary dismissal was a ruling on the appeal; therefore, when the dismissal was entered on this Court's docket, "it started a fresh 14-day clock running." [Doc. 61. at 2.]

A motion for attorney fees is only untimely under Rule 54(d) if the motion is (1) filed more than 14 days after a court's "entry of judgment," or (2) filed after a time specified by the court under Rule 54(d)(2)(B). Here, then, the motion is untimely if either (1) the Sixth Circuit's granting of Defendant State of Ohio's motion for voluntary dismissal under Federal Rule of Appellate Procedure 42(b) constituted an "entry of judgment"; or, (2) this Court's order denying the Plaintiff's first motion for attorney fees as moot constituted a "court order provid[ing]" that the 14-day time limit would automatically begin after the Sixth Circuit's ruling.

Rule 54(a) defines judgment as "any order from which an appeal lies." FED. R. CIV. P. 54(a). The Sixth Circuit has noted that "'[a] voluntary dismissal *without prejudice* is ordinarily *not* a final judgment from which the plaintiff may appeal.'" *Pavlovich v. National City Bank*, 461 F.3d 832, 836 (6th Cir. 2006) (quoting *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995)). Here, the Sixth Circuit's granting of Defendant State of Ohio's voluntary dismissal was not an entry of judgment

---

[2]/(...continued)
Although the parties do not dispute this issue, the Sixth Circuit has previously confirmed that the 14-day time limit applies to attorney fee motions under 28 U.S.C. § 1988. *Horne v. City of Hamilton, Ohio*, 181 F.3d 101, 1999 WL 313902 (6th Cir May 3, 1999).

Case No. 5:06-96
Gwin, J.

because it is not an order from which an appeal lies.

Because the voluntary dismissal was not an entry of judgment, the motion can only be untimely if this Court's order providing for an extension of time also required Plaintiff to refile the motion 14 days of the Sixth Circuit's ruling.

The Advisory Committee Note to the 1993 Amendments to Rule 54 discusses how a court of appeals' decision affects the timing of motion for attorney fees:

> If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved. A notice of appeal does not extend the time for filing a fee claim based on the initial judgment, but the court under subdivision (d)(2)(B) may effectively extend the period by permitting claims to be filed after resolution of the appeal. A new period for filing will *automatically begin **if a new judgment is entered*** following a reversal or remand by the appellate court or the granting of a motion under Rule 59.

FED. R. CIV. P. 54 advisory committee's note 1993 (emphasis added).

The Note does mention that, in certain circumstances, a new period for filing will automatically begin after a ruling by a court of appeals. This automatic restart of the 14-day limit only occurs, however, when a court "enter[s a new judgment] following a reversal or remand by the appellate court." Here, the Sixth Circuit did not reverse or remand this action and the granting of the voluntary dismissal was not an entry of judgment.

Additionally, nothing in this Court's order denying the first motion as moot suggested that a 14-time limit would automatically begin after a ruling on appeal, or that there was any time limit on the Plaintiff's refiling. The parties both contemplated in their joint motion to stay adjudication of the first motion for fees that the timing for refiling would be resolved after the Sixth Circuit's ruling. [*See* Doc. 52 at 1 ("Assuming this joint motion is granted and upon conclusion of the appeal, Plaintiff

-5-

Case No. 5:06-96
Gwin, J.

is entitled to petition this Court to establish a schedule for resolution of the attorney fees issue.")][3/]

This Court holds that the motion was timely.

### III. Propriety of a 1.25-Times Multiplier

In his Report and Recommendation, Magistrate Judge Gallas said that the record supported the Plaintiff's proposed hourly rate and submissions on total hours worked. [Doc. 60 at 6-12.] Using this rate and the submitted hours, Plaintiff arrives at a lodestar calculation of $26,291.00 in fees. [Doc. 56-1.] The Magistrate Judge approved this calculation and Defendant did not object to it. Plaintiff also submitted costs of $1,986,28. Defendant did not object to the costs. This Court adopts Magistrate Judge Gallas's Report and Recommendation on this calculation and costs.

Plaintiff went on to request, and Magistrate Judge Gallas went on to approve, the use of a 1.25-times multiplier to arrive at a fee total of $32,863.75. Defendant objected to the use of a 1.25-times multiplier here. [Doc. 61 at 5-8.]

The Supreme Court approved of the use of the lodestar method of fee calculation in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After approving of the use of the lodestar method, the Supreme Court also allowed a district court to make adjustments upward or downward. To guide adjustments, the Supreme Court held that "[t]he district court may consider [the] factors identified

---

[3/] Although this holding may seem inequitable to Defendant State of Ohio (i.e. Plaintiff had essentially no time limit governing the refiling of his motion for attorney fees), Defendant specifically moved for this arrangement by saying that "Plaintiff is entitled to petition this Court to establish a schedule for the resolution of the attorney fees issue." [Doc. 52.] Additionally, nothing prevented Defendant State of Ohio from petitioning this Court to establish a schedule for the resolution of this issue. As a further check on possibility of inequity, Defendant could have asserted the equitable defense of laches. But here the motion was not so late as to be inequitable. *Cf.* FED. R. CIV. P 58(c)(2)(B) (providing that a judgment, if it does not comply with Rule 58's requirement of a separate document, will be considered entered when "150 days have run from the entry in the civil docket"). Finally, to the extent that the time limit is intended to protect the nonmoving party by requiring prompt notice, Defendant continued to negotiate the fees issue even after filing its motion for voluntary dismissal. [Doc. 59-3, Ex. A at 1.]

-6-

Case No. 5:06-96
Gwin, J.

in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), though it should note that many of these factors usually are subsumed within the initial calculation of the hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n.9.

> The *Johnson* factors are
>
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989).

Since *Hensley*, however, the Supreme Court has curtailed the use of the *Johnson* factors to support a multiplier. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986), the Supreme Court held that

> we [have] specifically held . . . that the 'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.

*Id.* at 565 (quoting *Blum v. Stenson*, 465 U.S. 886 (1984)).

While discouraging the use of the *Johnson* factors to support a multiplier, the Supreme Court nonetheless recognized that "upward adjustments . . . are still permissible [but] proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Id.* The burden is on the party seeking fees to rebut the "strong presumption that the lodestar figure . . . represents a 'reasonable' fee . . . ." *Id.* at 565.

The reason that the Supreme Court has cautioned against the use of the *Johnson* factors as

Case No. 5:06-96
Gwin, J.

justification for a multiplier is based on a concern for "double counting." *See id.* at 566 ; *see also* 2 MARY FRANCIS DERFNER & ARTHUR D. WOLF, COURT AWARDED ATTORNEY FEES § 16.04 (noting that the Supreme Court was "primarily concerned with the issue of 'double counting'"). But, if the party seeking fees "can show demonstrably certain factors that were not incorporated in the rate analysis, it might be able to justify an enhancement of the lodestar." 2 COURT AWARDED ATTORNEY FEES § 16.04.

Here, Plaintiff says that the Court should award a multiplier here because of the results achieved and because of the undesirability of this case.

*III.A    Results Achieved*

Plaintiff says that a multiplier is warranted here because this case "established important precedent regarding the nature of sex-offender residency restrictions." [Doc. 59-1 at 7.] This Court holds that the result achieved in this case was exceptional.

*Grier v. Sundquist*, 372 F.3d 784, 795-796 (6th Cir. 2004), provides an example of a case that the Sixth Circuit has held is "one of those 'rare' and 'exceptional' cases meriting an upward adjustment of the lodestar figure." There, the plaintiff sued arguing that state had an affirmative duty "to remove all vestiges" of segregation at a time when some had considered that "an open door policy alone was sufficient to remedy *de jure* segregation in higher education. *Id.* at 795. But the plaintiff was successful in "steer[ing] the jurisprudence in a different direction." *Id.* at 796.

Like *Grier*, this case is exceptional. This Court held that enforcement Ohio Revised Code Section 2950.034 violated the federal constitution as applied to Mikaloff. This was one the first federal cases holding that sex-offender residency restrictions can violate the ex post facto clause of the Constitution.

-8-

Case No. 5:06-96
Gwin, J.

Defendant notes that the Ohio Supreme Court has subsequently held that Section 3950.034 did not apply retroactively. *Hyle v. Porter*, 882 N.E.2d 889 (Ohio 2008). While this subsequent holding limits the precedential importance of this Court's decision on Ohio's law, the result Plaintiff achieved is still an important precedent on the constitutionality of sex-offender residency laws generally. Plaintiff's case has been cited in several other jurisdictions and will likely remain an important precedent on this issue. *See People v. Mosley*, 86 Ca. Rptr. 3d 23 (Cal. App. Nov. 19, 2008); *McAteer v. Riley*, 2008 WL 989832 (M.D. Ala. Mar. 31, 2008); *State v. Pollard*, 886 N.E.2d 69 (Ind. App. 2008).

The exceptional result achieved in this case suggests that it warrants a multiplier.

III.B.  *Undesirability of Case*

Plaintiff also says that the undesirability of this case justifies the use of a multiplier. The undesirability of a case may be difficult to account for in the lodestar calculation. *See* 1 ALBA CONTE, ATTORNEY FEE AWARDS § 4.34 (2nd ed.) (noting that the undesirability of case is a factor that is "not included in the time/rate factors that merit[s] consideration for fee adjustments"); *see also* 2 COURT AWARDED ATTORNEY FEES § 16.03 (noting that the "'undesirability of the case' is treated as relevant to enhancement . . . of the . . . lodestar").

As an example, the Sixth Circuit has said that the undesirability of a case was an important factor in the fee calculation when the case involved a "client whose status in the community could hardly have been worse, whose only witnesses were convicted felons and who was indigent." *Greer v. Holt*, 718 F.2d 206, 208 (6th Cir. 1983).[4] More recently, in *Kenny A. ex rel. Winn v. Perdue*, 532

---

[4] *Greer* is only used as an example of what the undesirability factor attempts to address. The case did not explicitly involve a multiplier. *Greer*, 718 F.2d at 208.

Case No. 5:06-96
Gwin, J.

F.3d 1209, 1234 (11th Cir. 2008), the Eleventh Circuit noted that a situation where "an attorney who represents a pedophile attacking a sexual offender registration law on Due Process grounds," may justify a multiplier of the lodestar.

In addition to the general undesirability noted above, Plaintiff submitted additional evidence of undesirability in Ohio locally: (1) an appellate case in Ohio where a sex offender challenged the residency restrictions but proceeded pro se because he was unable to find an attorney to represent him, *Parma v. Silvas*, Cuyahoga App. No. 88104, 2007 WL 766019, *1 (Ohio App. Mar. 15, 2007); and (2) an affidavit by a Director of Legal Aid Society of Southwest Ohio saying that "private attorneys in Greater Cincinnati have not been willing to handle cases on behalf of individuals challenging sex-offender registry restrictions," [Doc. 59-4, Ex. B at 1].

The Plaintiff has met his burden in showing that the lodestar calculation did not appropriately take into account the undesirability of the case and has shown that the result in this case is exceptional. The combination of the exception result and the undesirability of this case warrants the relatively modest multiplier that Plaintiff has requested.

### IV. Conclusion

For the reasons stated above, this Court **GRANTS** Plaintiff Mikaloff's motion for fees and costs. Accordingly, this Court awards Plaintiff fees and costs totaling $34,700.03.

IT IS SO ORDERED.

Dated: March 30, 2009            *s/    James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE